UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE UNITED STATES OF AMERICA * <br> * <br> v. * <br> * Criminal Action No. 13-30035-MGM <br> WILKENSON KNAGGS, * <br> * <br> Defendant. * | |

MEMORANDUM AND ORDER REGARDING DEFENDANT'S RENEWED
MOTION FOR A JUDGMENT OF ACQUITTAL AS TO COUNTS 6 & 7
(Dkt. No. 115)

March 13, 2015

MASTROIANNI, U.S.D.J.

## I. INTRODUCTION

On September 12, 2013, Wilkenson Knaggs ("Defendant") was indicted for three counts of mail fraud under 18 U.S.C. § 1341, two counts of forged endorsement of a security under 18 U.S.C. § 513, and two counts of engaging in monetary transactions in property derived from specified unlawful activity under 18 U.S.C. § 1957. (Dkt. No. 4, Indictment.) A jury trial took place between December 15, 2014 and December 19, 2014. Following the United States' ("Government") presentation of evidence, Defendant moved for a directed verdict of acquittal as to, inter alia, the two 18 U.S.C. § 1957 counts. This motion was denied in court. The jury subsequently convicted Defendant on all seven criminal counts with which he was charged.

On January 2, 2015, Defendant filed a timely "renewed motion for a judgment of acquittal as to counts 6 & 7." (Dkt. No. 115, Defendant's Renewed Motion for Judgment Of Acquittal and accompanying memorandum ("Def. Mem.").) The Defendant argues the Government failed to present sufficient evidence to permit the jury to infer that the monetary transactions in question affected interstate commerce, as is required by the statute. See 18 U.S.C. § 1957(a), (f). After receiving an extension (Dkt. No. 122), the Government filed an opposition to this motion on

January 23, 2015. (Dkt. No. 124.) Defendant filed a reply brief on February 4, 2015 (Dkt. No. 125, Attachment 1, Def. Reply Brief 2),[1] and the Government filed a supplemental opposing memorandum on February 19, 2015 (Dkt. No. 131).

Defendant's argument relies upon a relatively narrow question pertaining to the final instruction, so a full-scale restatement of the facts is unnecessary. Facts relevant to this motion will be discussed below where they are applicable.

The court finds sufficient evidence was presented to permit the inference that Defendant engaged in monetary transactions that sufficiently affected interstate commerce with respect to Counts 6 and 7. The court denies Defendant's motion.

## II. STANDARD

Within 14 days after a jury verdict of guilty, a defendant may renew a previously-brought motion for judgment of acquittal. See Fed R. Crim. P. 29(c)(1). On a defendant's motion for renewed judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The court is tasked with determining "whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable inferences, viewed in the light most favorable to the government, established each element of the particular offense beyond a reasonable doubt." United States v. Richard, 234 F.3d 763, 767 (1st Cir. 2000) (quoting United States v. Gabriele, 63 F.3d 61, 67 (1st Cir. 1995)). As a result, "[d]efendants challenging convictions for insufficiency of evidence face an uphill battle." United States v. De La Cruz, 2014 WL 3925497, at *1 (D. Mass. Aug. 12, 2014) (quoting United States v. Perez-Melendez,

---

[1] In this reply brief, Defendant raised a new issue. (Dkt. No. 125.) For this reason, the court granted the Government two weeks to respond to it in a supplemental memorandum. (Dkt. No. 127.) The court discusses this issue in Section III(B), infra.

599 F.3d 31, 40 (1st Cir. 2010) (discussing Defendant's chances of success on appeal under a de novo review)).

## III. DISCUSSION

**A. Sufficiency of Evidence under 18 U.S.C. § 1957**

Section 1957 of title 18 of the United States Code ("U.S.C.") makes it illegal to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity." 18 U.S.C. § 1957(a). The statute defines a "monetary transaction" as "the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument …by, through, or to a financial institution." 18 U.S.C. § 1957(f). Section 1957(f) only requires that these transactions have a "de minimis effect," or "minimal impact," on interstate commerce. United States v. Benjamin, 252 F.3d 1, 9 (1st Cir. 2001); see United States v. Parkes, 497 F.3d 220, 230 (2d Cir. 2007) (Section 1957 requires only a "potential or subtle effect" on interstate commerce); see also United States v. Grey, 56 F.3d 1219, 1225 (10th Cir. 1995) (effectively defining minimal as of "the least quantity assignable, admissible, or possible in a given case" (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, Unabridged 1968)).

Despite this well-established standard by which the court is bound in its ruling, "federal prosecutors must devote the minimal effort necessary to establish federal jurisdiction over the acts of the accused." United States v. Leslie, 103 F.3d 1093, 1103 (2d Cir. N.Y. 1997) ("There is nothing more crucial, yet so strikingly obvious, as the need to prove the jurisdictional element of a crime.").

(1) Count 6—64 Marlborough Street

The conduct allegedly giving rise to the violation of 18 U.S.C. § 1957 specified in Count 6 was "Payment of $16,854.29 by bank check for the purchase of 64 Marlborough Street, Springfield, Massachusetts." (Dkt. No. 4, Indictment 14.) Defendant argues that, since the Government did not

3

introduce any evidence to support the proposition that (1) the "issuing bank" was FDIC insured, or (2) that it otherwise operated in or affected interstate commerce, it failed to meet its burden on this aspect of the crime alleged. (Dkt. No. 115, Def. Mem. 5.) Even assuming Defendant correctly asserts a lack of sufficient evidence pertaining to the issuing bank, Defendant's argument still fails with respect to Count 6.

The Commerce Clause bestows upon Congress the power, inter alia, to "regulate Commerce . . . among the several States." U.S. Const., art. I, § 8, cl. 3; United States v. Bongiorno, 106 F.3d 1027, 1030 (1st Cir. 1997). The Supreme Court has explicitly stated that rental of real estate affects interstate commerce. See Russell v. United States, 471 U.S. 858, 862 (1985). Accordingly, the First Circuit has held that crimes involving rental property are "per se sufficient[ly]" connected to interstate commerce for the purpose of at least one federal statute with an interstate commerce requirement.[2] United States v. Guzman, 603 F.3d at 109 (discussing this issue in the context of the federal arson statute, 18 U.S.C. § 844(i)) (quoting United States v. DiSanto, 86 F.3d 1238, 1248 (1st Cir. 1996)). Other courts have held that the mere purchase of real estate affects interstate commerce as well. See, e.g., United States v. Evans, 285 F.3d 664, 670-71 (8th Cir. 2002), cert. denied, 537 U.S. 1196 (2003); United States v. Riedl, 2006 WL 1119162, at *9 (D. Haw. Apr. 24, 2006) ("[T]he transfer of real property. . . affected interstate commerce because they were part of the interstate real estate market in Hawaii.").

In ruling upon the instant motion, the court is directed by the aforementioned authority. Specifically, the court discerns no reason why the First Circuit's holding in Guzman in the context of 18 U.S.C. § 844(i) should not be extended to the interstate commerce requirement of 18 U.S.C. § 1957. See 603 F.3d at 109. The court also discerns no reason why the Supreme Court's rationale

---

[2] But see Jones v. United States, 529 U.S. 848, 850-851 (2000) ("[A]n owner-occupied residence not used for any commercial purpose does not qualify as property 'used in' commerce or commerce-affecting activity...").

pertaining to the renting of real estate affecting interstate commerce in Russell should not apply to the purchase of real estate for the purpose of renting that real estate to others. See 471 U.S. at 862; see also Evans, 285 F.3d at 671 (purchase of real estate affects interstate commerce). It would be illogical to find that intentionally setting fire to rental property affects interstate commerce, see Guzman, 603 F.3d at 109, if the landlord's purchase of that rental property does not also affect interstate commerce. See Benjamin, 252 F.3d at 9 (only "de minimus" affect on interstate commerce is required).

Ample evidence was presented during trial to permit the jury to infer Defendant was in the business of purchasing properties for subsequent rental.[3] See generally Richard, 234 F.3d at 767 (all reasonable inferences viewed in light most favorable to Government). The evidence further permits the inference that, after depositing his first illegally-obtained check[4] (Trial Exhibit ("Exh.") 24 at 14, 20), Defendant wrote a check for $16,854 with his newly-acquired money, payable to Michelman Law Office,[5] which was used to buy property at 64 Marlborough Street on his behalf.[6]

Therefore, the court applies the holding of Guzman and finds the transaction resulting in the purchase of 64 Marlborough Street was sufficiently connected to interstate commerce to fit within the definition of "monetary transaction" under 18 U.S.C. § 1957. See 603 F.3d at 109. Accordingly, the jury was permitted to find Defendant guilty of Count 6.

(2) Count 7—99 Central Street

---

[3] Lisa DeSousa, Jay Michelman, and Lude Vincent all provided evidence which indicated Defendant was involved in the buying of real estate for the purposes of renting it to tenants for a profit.

[4] The specified unlawful activity which gave rise to a second alleged violation of 18 U.S.C. § 1957 was a violation of 18 U.S.C. § 1341 (Mail Fraud), for which Defendant was convicted. See 18 U.S.C. § 1957(a) (to be convicted under this statute, a defendant must have obtained the funds in question by way of a violation of a specified unlawful activity).

[5] The evidence demonstrated Defendant's real estate attorney was Jay Michelman, of the Michelman Law Office.

[6] Though Defendant did not directly conduct the real estate transaction, the court finds that the evidence sufficed to show that Attorney Michelman was acting as Defendant's agent when he conducted the transaction which resulted in the purchase of the property in question. See generally United States v. Richard, 234 F.3d 763, 767 (1st Cir. 2000) (at this stage, all reasonable inferences are viewed in the light most favorable to the Government). Therefore, this transaction is attributable to Defendant for the purpose of this statute.

Count 7 alleges Defendant violated 18 U.S.C. § 1957 in his effective purchase of a second property at 99 Central Street. In exchange for a second illegally-obtained check,[7] which Defendant cashed at Boston Check Cashing Service, Defendant received $30,000 in money orders, in addition to some cash. (Exh. 36.) Defendant transferred those money orders to Attorney Michelman, who ultimately utilized them to purchase 99 Central Street on Defendant's behalf. (Exh. 34.) Whether Attorney Michelman's deposit of these money orders (Exh. 33) into an FDIC-insured client-fund bank account sufficed for the interstate commerce requirement (Dkt. No. 115, Def. Mem. 5.), need not be addressed as Defendant's argument fails on other essential grounds.

Defendant asserts there was no evidence demonstrating he gave the money to his attorney knowing or intending it to be deposited into an FDIC-insured bank account by that attorney. (Dkt. No. 115, Def. Mem. 5-6.) Even if these assertions are true, Defendant concedes the money orders "appear to have represented the final payment for the [99 Central Street] property." (Dkt. No. 115, Def. Mem. 7.) The court finds the evidence permits the inference that Defendant intended these funds to be used to purchase real estate and the funds were so used. See Richard, 234 F.3d at 767.

The court concludes that purchasing rental property suffices for the interstate commerce requirement of 18 U.S.C. § 1957(f), see Guzman 603 F.3d at 109, and there was sufficient evidence for a jury to infer that Defendant's real estate purchases were made for the purpose of renting the properties to other tenants. Therefore, since there was also sufficient evidence for a jury to infer that Defendant transferred the money orders to Attorney Michelman for the purpose of purchasing 99 Central Street, it follows that the evidence presented at trial sufficed to fulfill the elements of 18 U.S.C. § 1957 with respect to Count 7.

### B. Jury Instruction

---

[7] The specified unlawful activity which gave rise to a second alleged violation of 18 U.S.C. § 1957 was also a violation of 18 U.S.C. § 1341 (Mail Fraud), for which Defendant was convicted. See 18 U.S.C. § 1957(a) (to be convicted under this statute, a defendant must have obtained the funds in question by way of a violation of a specified unlawful activity).

Defendant's argument, focusing on one sentence from the court's 18 U.S.C. § 1957 jury instruction, merits discussion. Defendant argues that, for the 18 U.S.C. § 1957 convictions to survive a Motion for Directed Verdict, the language of the jury instruction required the jury to find a financial institution which, itself, affected interstate commerce was involved in the transactions in question.[8] (Dkt. No. 125, Attachment 1, Deft. Reply Brief 1.) While Defendant raises a point which merits careful analysis, the court ultimately finds this argument unavailing.

    (1)  <u>Instruction as a Whole</u>

"A jury instruction cannot be read in a vacuum, but, rather, must be taken in light of the charge as a whole." <u>Ellis v. United States</u>, 313 F.3d 636, 645 (1st Cir. 2002). The entirety of the 18 U.S.C. § 1957 jury instruction, interpreted and evaluated by drawing reasonable inferences in favor of the Government, renders Defendant's argument unavailing. <u>See</u> <u>generally</u> <u>Richard</u>, 234 F.3d at 767.

The court does not share Defendant's interpretation of the line on which he focuses. The language used in the portion of the instruction initially describing the first element does not necessarily require the jury to find the financial institution, itself, affected interstate commerce. This sentence may also reasonably be interpreted as requiring the jury to find the transaction both affected interstate commerce and involved a financial institution. When read by itself, this sentence may arguably be susceptible to two different interpretations. However, the remainder of the jury instruction clarifies any ambiguity. <u>See</u> <u>generally</u> <u>Ellis</u>, 313 F.3d at 645.

The Defendant supports his interpretation of this jury instruction by arguing: "the jury was never instructed...that a 'transaction . . . affecting interstate commerce' would, without more, also constitute a 'monetary transaction.'" (Dkt. No. 125, Attachment 1, Def. Reply Brief 2.) However,

---

[8] In its description of the elements of 18 U.S.C. § 1957, prior to the section defining certain terms, the court described the first element as follows: "Wilkenson Knaggs deposited, withdrew, or exchanged funds over $10,000 in a financial institution affecting interstate commerce."

7

contrary to Defendant's contention, the jury was instructed that "'[a]ffecting interstate commerce' means that the transaction affected commerce in any way or degree," and that "[o]nly a minimal effect on commerce is necessary." This clarification was placed immediately after the recitation of the 18 U.S.C. § 1957 elements. By using the broad term, "transaction," in conjunction with the phrase, "in any way or degree," the entire instruction effectively clarified, for the jury, the manner in which the interstate commerce element could be satisfied. Even if a portion of the 18 U.S.C. § 1957 instruction was interpreted by the jury to require the involvement of a financial institution,[9] a reading of the whole instruction indicates that this financial institution need not have been involved in interstate commerce for conviction.

  (2) <u>Law Governing Sufficiency Inquiry</u>

Even if the court were to accept Defendant's premise—that the instructions required the jury to find the transactions involved a financial institution which was, itself, involved in interstate commerce—Defendant's argument fails because the jury instruction would not become the law under which the sufficiency of evidence is evaluated.

Defendant relies on <u>United States v. Gomes</u>, in which the First Circuit stated "[i]t is settled that, when a cause is submitted to the jury under an instruction, not patently incorrect or internally inconsistent, to which no timely objection has been lodged, the instruction becomes the law of the case." (Dkt. No. 125, Attachment 1, Deft. Reply Brief 1.) <u>See</u> 969 F.2d 1290, 1294 (1st Cir. 1992). By the explicit wording of <u>Gomes</u>, not all jury instructions fall within its purview. <u>See id.</u> (rule applies to all instructions "not patently incorrect or internally inconsistent").

---

[9] Insofar as the instructions can only be read as requiring a financial institution to have been involved in the transactions in question (independent of the interstate commerce provision), there was sufficient evidence to fulfill this requirement. <u>See</u> <u>generally</u> <u>United States v. Ness</u>, 565 F.3d 73, 78 (2d Cir. 2009) (In order to sustain a conviction under this statute, "a financial institution must have been involved."). Defendant has conceded that financial institutions were involved in the two transactions in question in his first memorandum. (Def. Mem. 5.)

Here, Defendant's interpretation of the instructions' sentence in question results in a jury instruction that is "internally inconsistent," and arguably "patently incorrect." See id. Regardless, the result is the same. See id. The First Circuit has explained: "a 'patently incorrect' jury instruction may not become the law of the case." See United States v. Zanghi, 189 F.3d 71, 79 (1st Cir. 1999). Accordingly, in Zanghi, after ruling the jury instruction in question was "patently incorrect," the First Circuit evaluated the sufficiency of the evidence produced "to determine if it would allow a rational jury to find each essential element of the violation" of the statute in question, irrespective of the jury instructions. Id.

If the placement of the phrase "financial institution" effectively adds another element, as Defendant contends, the instructions' subsequently-placed definition of "affecting interstate commerce" directly contradicts that element by explaining the jury could find the "the transaction affected interstate commerce in any way or degree." The flexibility given to the jury in the latter portion of the instruction is therefore inconsistent with a requirement that the interstate commerce element may only be fulfilled through a financial institution which is, itself, involved in interstate commerce. See Gomes, 969 F.2d at 1294 (indicating that internally inconsistent instructions do not govern the sufficiency inquiry). For this reason, the instruction's articulation of 18 U.S.C. § 1957 would not become the "law of the case" for this purpose. See Zanghi, 189 F.3d at 79.

Further, even if the instruction did require the jury to find the financial institution involved in the transactions, itself, affected interstate commerce, the instruction does not govern the sufficiency inquiry because this connection between the financial institution and interstate commerce is not legally required.[10] See U.S. v. Cianci, 378 F.3d 71, 97 (1st Cir. 2004). Defendant has conceded

---

[10] In U.S. v. Cianci, when the jury instructions required a federal connection which the Supreme Court subsequently held not to be required, the First Circuit found the jury instruction to be "patently incorrect." See 378 F.3d 71, 97 (1st Cir. 2004) (citing Sabri v. United States, 541 U.S. 600 (2004)). Applying Zanghi, the Cianci court disregarded the unnecessary instruction upon which the sufficiency-of-evidence challenge was based. See Cianci, 378 F.3d at 97 (citing Zanghi, 189 F.3d at 79).

9

this latter point. (Dkt. No. 125, Attachment 1, Def. Reply Brief 1 (citing Benjamin, 252 F.3d at 10).). Therefore, under this interpretation, the question of whether sufficient evidence was presented to connect the financial institution in question to interstate commerce is irrelevant. See Cianci, 378 F.3d at 97.

Regardless of whether the instruction can be more accurately described as internally inconsistent or patently incorrect, the jury instruction would not fall within the purview of Gomes, even under Defendant's interpretation. See 969 F.2d at 1294. Therefore, similar to the First Circuit's approach in Zanghi, the court would defer to ascertaining whether a rational jury could find that the evidence was sufficient to prove each essential element of 18 U.S.C. § 1957.[11] See Zanghi, 189 F.3d at 79. Defendant concedes, if a broader charge had been given, the government's argument pertaining to the constraints on the jury's 18 U.S.C. § 1957 verdict "would be correct." (Dkt. No. 125, Attachment 1, Def. Reply Brief 2-3.) See, e.g., Benjamin, 252 F.3d at 10. Specifically, Benjamin indicates that a monetary transaction can be proven upon sufficient evidence that the deposit, withdrawal, transfer, or exchange charged in the indictment was in or affecting interstate commerce. See id.

## IV. CONCLUSION

For the reasons set forth above, Defendant's renewed motion for a judgment of acquittal as to Counts 6 and 7 (Dkt. No. 115) is DENIED.

It is So Ordered.

---

[11] The court notes the indictment was not provided to the jury or made part of the evidence they considered. See Zanghi, 189 F.3d at 79 (looking to the terms of the indictment to see whether it "raises the bar of proof for the government"). Nevertheless, to the extent it may have relevance to this overall analysis, see id., the indictment's wording is consistent with the broader articulation of the 18 U.S.C. § 1957 charge which was deemed acceptable in Benjamin. See 252 F.3d at 10. Further, the indictment also states the transaction occurred "through" a financial institution, thereby indicating the Defendant's charge was not limited to his direct transaction with a financial institution.

10

  /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge